IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, ) ) ) ) Plaintiff, ) ) v. ) ) CLAYTON A. COHN and ) MARKETACTION ADVISORS, LLC, ) ) Defendants. ) ) ) | No. JURY DEMANDED |

# COMPLAINT

Plaintiff United States Securities and Exchange Commission alleges:

1. Defendant Clayton A. Cohn is selling Limited Liability Company interests in a Chicago-based hedge fund, Marketaction Capital Management, LLC ("the Fund"), through his investment advisory firm, defendant Marketaction Advisors, LLC ("MA Advisers"). Cohn targets veterans and current military personnel as potential investors, among others. So far, Cohn has raised approximately $1.78 million from 24 investors.

2. Cohn has used less than half of the investor proceeds on the trading strategy described in his pitch to potential investors. He also invested a small amount of the investor proceeds in private equity-style investments in small enterprises. Sadly, Cohn has lost every penny of these investments – the

result of unsuccessful trading and bad investment choices.

3. Cohn has used the rest of the investors' proceeds to support his lavish lifestyle – thereby perpetuating the carefully contrived image of a successful trader and investor.

4. Cohn is concealing his losses from his investors by lying about the fund's performance; by fabricating investor account statements; by forging brokerage statements; and by using new investor money to pay redemptions to earlier investors.

5. The jig is just about up. Several investors have requested redemptions simultaneously. Cohn has refused to honor their requests, claiming that unspecified liquidity problems have temporarily delayed such redemptions. In fact, Cohn and the Fund are broke. But that sad reality has not diminished his thirst for new victims, which he has continued to lure since losing the bulk the investors' proceeds.

6. The Commission brings this lawsuit to put an immediate stop to Cohn's ongoing violations of the federal securities laws, to prevent further harm to investors, and to seek disgorgement and civil penalties from Cohn stemming from his violations of the securities laws, among other remedies.

## JURISDICTION AND VENUE

7. The Commission brings this action pursuant to Section 20(b) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §77t(b)], Sections 21(d) and 21(e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§78u(d) and 78u(e)], and Section 209(d) of the Investment Advisers Act of 1940 [15 U.S.C. § 80b-9(d)].

8. This Court has jurisdiction over this action pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v], Section 27 of the Exchange Act [15 U.S.C. § 78aa], Section 214 of the Advisers Act [15 U.S.C. § 80b-14], and 28 U.S.C. § 1331.

9. Venue is proper in this Court pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Acts, practices and courses of business constituting violations alleged herein have occurred within the jurisdiction of the United States District Court for the Northern District of Illinois and elsewhere.

10. Defendants directly and indirectly made use of the means and instrumentalities of interstate commerce and of the mails in connection with the acts, practices, and courses of business alleged herein, and will continue to do so unless enjoined.

## DEFENDANTS

11. Defendant Clayton A. Cohn, age 26, lives in Winnetka, Illinois. Cohn is the Managing Member of defendant MA Advisors. Since at least

September 2011, Cohn, through MA Advisors, has been engaged in the unregistered offer and sale of securities in the form of limited liability company interests in his hedge fund, Marketaction Capital Management, LLC. Cohn is not registered with the Commission in any capacity.

12. Defendant MA Advisors is an investment adviser registered with the state of Illinois that maintains its principal place of business in Chicago. Cohn formed MA Advisors in March 2011. As of December 2012, MA Advisors claimed to have $2.2 million in assets under management. MA Advisors is not registered with the Commission in any capacity.

## OTHER PARTIES

13. Marketaction Capital Management, LLC is a domestic hedge fund organized under the laws of Delaware with its principal place of business in Chicago, Illinois. As of February 2013, the Fund claims to have raised a total of more than $1.5 million from 24 investors. The Fund is not registered with the Commission in any capacity.

## FACTS

14. Cohn is a hedge fund manager who portrays himself to investors as a successful equities trader, entrepreneur, and philanthropist. Cohn attended DePaul University in Chicago for one semester before dropping out. In March 2010, after working as a broker trainee for a brokerage firm in Chicago for three weeks, Cohn quit to start his own financial services firm. After an unsuccessful attempt to run an investment advisory business, Cohn decided to start his own

4

hedge fund.

15. In March 2011, Cohn formed Marketaction Capital Management, LLC. The Fund claims to be a multi-strategy hedge fund focused primarily on trading equity options. Cohn acts as portfolio manager for the Fund through Marketaction Advisors, LLC. Cohn is the sole owner and representative of MA Advisors, and is responsible for the firm's activities. Cohn, through MA Advisors, charges a management fee of 2% on fund assets and a 20% performance fee on profits earned by the Fund. According to the Fund's operating documents, MA Advisors set a 10% quarterly hurdle rate that it must meet before it can collect its performance fee. Since at least September 2011, MA Advisors has been conducting an unregistered offering of limited liability company interests ("LLC Interests") in the Fund. Through May 2013, the offering has raised approximately $1.78 million from 24 investors.

16. Cohn targets mostly unsophisticated investors and has solicited his friends, his family members, and his fellow veterans to invest in the Fund. Cohn controls a so-called charity – the Veteran's Financial Education Network ("VFEN") – that purports to teach veterans how to understand and manage their money. In a press release issued by VFEN in June 2012, Cohn – touting his Marine Corps pedigree – encourages veterans to find "a money-manager who is both trustworthy and knows what he is doing." VFEN's website tells veterans that if they are "looking to find the best money manager that is suitable for you, [VFEN] will help guide you in the right direction . . . ." The website

5

identifies Cohn as a money manager who "manages millions of dollars."

## COHN'S LIES TO HIS INVESTORS AND TO POTENTIAL INVESTORS

17. Cohn solicits potential investors in person, over the phone, through email and text messaging, and on various social media websites. Cohn's solicitations included several false and misleading statements:

- **"Skin in the Game"** – the Fund's pitch book, which Cohn drafted, claims that Cohn has a direct equity stake in the Fund. In addition, Cohn told a potential investor that he had $1.5 million of his own money invested with the Fund. At the time, however, Cohn had invested at most $4,000 of his own money in the Fund.

- **Fund Auditors** – MA Advisors' Form ADV states that the Fund's financial statements are prepared in accordance with U.S. GAAP and subject to an annual audit. The Fund's PPM identifies an Illinois-based accounting firm as the Fund's auditor. But neither Cohn nor his companies retained the firm; the firm is unfamiliar with defendants.

- **The Fund's Performance** – Cohn lies to investors about the Fund's performance. The Fund's pitch book, includes a screenshot of what purports to be an investor's account statement. The screenshot shows year-to-date returns of 180%. But Cohn's trading never generated any return for investors – let alone a return of that magnitude.

- **Cohn's Personal Trading Success** – the Fund's pitch book claims that Cohn taught himself how to trade and made a "healthy profit" by short selling in advance of the 2008 financial crisis. Other offering materials claim that Cohn generated a 132% cumulative return from the fourth quarter of 2008 through the first quarter of 2011. Cohn also told a potential investor that he made $1.5 million trading $50,000 he received from his parents. Cohn's brokerage statements, however, show that Cohn's early trading resulted in little, if

any, net trading profits.

## COHN SQUANDERS INVESTOR PROCEEDS AND SEEKS TO COVER-UP HIS WRONGDOING

18. Marketing materials for the Fund and its PPM emphasize the Fund's equity and equity option trading strategy and tout Cohn's trading acumen. But Cohn has used less than half of the $1.78 million he raised from investors to execute any such strategy. And he has lost what money he has invested.

19. Cohn also used a small portion of the investor proceeds to make private equity-style investments in small, startup companies, including a t-shirt design company, a small hair extension sales company operated by a high school friend of Cohn's, and a 3-D adult film production company. These investments are virtually worthless.

20. Cohn has spent the rest of the investors' money living the high life. He spent at least $400,000 in investor proceeds on personal items, including rent payments on a $10,000/month mansion in Los Angeles, payments on a luxury sports car, gambling, extravagant tabs at high-end nightclubs, and the purchase of luxurious personal items. In addition, Cohn withdrew more than $100,000 in cash directly from the Fund bank account.

21. Cohn's malfeasance has taken its toll. As of the end of June 2013, the Fund's bank account is in the red, while its brokerage account is virtually worthless.

22. None of which Cohn has bothered disclosing to his investors. On

the contrary, Cohn regularly sends investors a "Daily Performance Report" detailing the Fund's trading activity for the day, disclosing the Fund's supposed year-to-date return. Throughout 2012, the performance reports indicated that the Fund was steadily growing and that it had an annual return of nearly 200% in 2012. The year-to-date returns reflected in the performance reports are a complete fabrication. Cohn also posted bogus individual account statements for investors on his www.marketaction.com website. Cohn created, and posted on the www.marketaction.com website, asset allocation tables that identified holdings the Fund never had. Cohn has kept up his façade of success through conspicuous consumption financed by rapidly dwindling investor proceeds.

## COUNT I

### Violations of Sections 5(a) and 5(c) of the Securities Act
### (Against Both Defendants)

23. Paragraphs 1 through 22 are realleged and incorporated by reference as though fully set forth herein.

24. Cohn and MA Advisors violated Sections 5(a) and 5(c) of the Securities Act by conducting an unregistered offering in which Cohn, through MA Advisors, directly offered and sold LLC interests in the Fund in several states using a combination of in-person meetings, phone calls, emails, text messages, and social media sites. The LLC interests are "securities" as that term is defined in Section 2(a)(1) of the Securities Act and Section 2(10) the Exchange Act [15 U.S. C. §§ 77b(a)(1) and 78(b)(10)].

25. Defendants, singly or in concert, made use of the instrumentalities of interstate commerce to effect the unregistered sale of the LLC interests. No registration statement was filed or in effect for the sale of such LLC interests.

26. By reason of the foregoing conduct defendants violated and, unless restrained and enjoined, will continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## COUNT II

### Violations of Section 17(a)(1) of the Securities Act
### (Against Both Defendants)

27. Paragraphs 1 through 22 are realleged and incorporated by reference as though fully set forth herein.

28. Cohn, through MA Advisors, made several false and misleading statements to investors. He lied to investors about his early trading success. He lied to investors about having a direct equity stake in the Fund. And he lied to investors about the Fund's performance and net asset value ("NAV") by repeatedly claiming that the Fund was generating triple-digit returns when, in reality, the Fund was losing money. He also failed to disclose to investors that he was charging a management fee and performance fees that were based on the inflated NAV.

29. Cohn's misrepresentations were made in the offer and sale of securities because they were made either by Cohn directly to investors prior to their decision to purchase LLC interests in the Fund or in marketing materials

prepared by Cohn and sent, by Cohn, to investors prior to their decision to purchase LLC interests in the Fund.

30. Cohn's misrepresentations were material. Statements relating to Cohn's early trading success are material because the success or failure of the Fund is directly related to Cohn's trading and investment decisions. Cohn's claims regarding having his own "skin in the game" are material because many investors believe that a fund manager whose incentives are aligned with those of a fund's investors will generally take extra care in performing his duties. Cohn's claim regarding the Fund's use of an independent auditor is material because it falsely implies that the Fund's financial performance will be reviewed by an outside auditor. Cohn's lies about the Fund's performance and NAV are material because they made the Fund appealing to investors.

31. By engaging in the conduct described above, defendants, in the offer and sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, have employed devices, schemes and artifices to defraud.

32. Defendants intentionally or recklessly made the untrue statements and omissions and engaged in the devices, schemes, artifices, transactions, acts, practices and courses of business described above. Cohn knew he never generated triple-digit returns for his own account and he also knew that he did not invest $1.5 million of his own capital in the Fund. Further, Cohn knew that the Fund did not retain an independent auditor, since he controls every aspect

of MA Advisors and the Fund. Cohn also is the only trader for the Fund and he had complete control of the Fund's bank and brokerage accounts. Therefore, Cohn knew that the performance figures that he provided to investors were a complete fabrication. Cohn's scienter can be imputed to MA Advisors because he is the managing member and sole owner of the firm.

33. By reason of the foregoing, defendants violated Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT III

### Violations of Sections 17(a)(2) and (3) of the Securities Act
### (Against Both Defendants)

34. Paragraphs 1 through 22 and paragraphs 28 through 32 are realleged and incorporated by reference as though fully set forth herein.

35. By engaging in the conduct described above, defendants, in the offer and sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, have:

    a.    obtained money or property by means of untrue statements of material fact or by omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

    b.    engaged in transactions, practices, or courses of business that operated or would operate as a fraud or deceit upon the purchasers of

such securities.

36. Defendants made the untrue statements and omissions of material fact and engaged in the devices, schemes, artifices, transactions, acts, practices and courses of business described above.

37. By reason of the foregoing, defendants have violated Sections 17(a)(2) and (3) of the Securities Act [15 U.S.C. § 77q(a)(2)-(3)].

## COUNT IV

### Violations of Section 10(b) of the Exchange Act, and Exchange Act Rule 10b-5
### (Against Both Defendants)

38. Paragraphs 1 through 22 and paragraphs 28 through 32 are realleged and incorporated by reference.

39. As more fully described in paragraphs 1 through 22 and paragraphs 28 through 32 above, defendants, in connection with the purchase and sale of securities, by the use of the means and instrumentalities of interstate commerce and by the use of the mails, directly and indirectly: used and employed devices, schemes and artifices to defraud; made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and engaged in acts, practices and courses of business which operated or would have operated as a fraud and deceit upon purchasers and sellers and prospective purchasers and sellers of securities.

40. Cohn is the sole owner and representative of MA Advisors, the manager of the Fund. The Fund does not have a board of directors. Cohn is responsible for the activities of MA Advisors. He created the Fund's marketing materials. Cohn also regularly sent email updates to investors in which he lied about the Fund's performance. Cohn not only drafted the emails, but he signed them with his electronic signature. Cohn also controls the marketaction.com website. He has ultimate authority over the fund performance figures and the account statements that investors viewed on the website.

41. Defendants knew, or were reckless in not knowing, of the facts and circumstances described in paragraphs 1 through 22 and paragraphs 28 through 32 above.

42. By reason of the foregoing, defendants violated Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5].

## COUNT V

### Violations of Advisers Act Sections 206(1) and 206(2)
### (Against Both Defendants)

43. Paragraphs 1 through 22 are realleged and incorporated by reference.

44. MA Advisors collected a management fee from the Fund based on the investment management services it provided to the Fund. Cohn, through MA Advisors, defrauded the Fund – MA Advisors' only client – when he

misappropriated the Fund's assets. Cohn and MA Advisors also defrauded the Fund when they charged the Fund a management fee and performance fees that were based on an inflated NAV.

45. As more fully described in paragraphs 1 through 22 above and as alleged in this claim, at all times alleged in this complaint, defendants, while acting as an investment adviser, by use of the mails, and the means and instrumentalities of interstate commerce, directly or indirectly, knowingly, willfully or recklessly: (i) employed devices, schemes or artifices to defraud its clients or prospective clients; and (ii) engaged in transactions, practices and courses of business which have operated as a fraud or deceit upon its clients or prospective clients.

46. By reason of the foregoing, defendants have violated Sections 206(1) and 206(2) of the Advisers Act. [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

## COUNT VI

### Violations of Sections 206(4) of the Advisers Act and Rule 206(4)-8 Thereunder (Against Both Defendants)

47. Paragraphs 1 through 22 above are realleged and incorporated herein by reference.

48. Cohn and MA Advisors defrauded Fund investors by making false and misleading statements relating to Cohn's trading ability, Cohn's "skin in the game," the Fund's use of independent auditors, and the Fund's performance record. Cohn and MA Advisors also made false and misleading statements to

14

investors by providing them with forged brokerage statements and falsified account statements and asset allocation charts. Lastly, Cohn and MA Advisors made a material omission by failing to disclose that they were charging the Fund a management fee and performance fees that were based on an inflated NAV.

49. By their conduct, defendants, while acting as investment advisers, directly or indirectly, by use of the mails or means or instrumentalities of interstate commerce, engaged in acts, practices, or courses of business that were fraudulent, deceptive, or manipulative.

50. By their conduct, defendants, while acting as investment advisers to a pooled investment vehicle: (a) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, to investors or prospective investors in the pooled investment vehicle; or (b) engaged in acts, practices, or courses of business that were fraudulent, deceptive, or manipulative with respect to investors or prospective investors in the pooled investment vehicle.

51. By reason of the foregoing, defendants violated Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## RELIEF REQUESTED

**WHEREFORE,** the Commission respectfully requests that this Court:

### I.

Issue findings of fact and conclusions of law that defendants committed the violations charged and alleged herein.

### II.

Enter an Order of Permanent Injunction restraining and enjoining defendants, their officers, agents, servants, employees, attorneys and those persons in active concert or participation with defendants who receive actual notice of the Order, by personal service or otherwise, and each of them from, directly or indirectly, engaging in the transactions, acts, practices or courses of business described above, or in conduct of similar purport and object, in violation of Section 17(a) and Section 5(a) and Section 5(c) of the Securities Act [15 U.S.C. §§ 77q(a), 77e(a) and 77e(c)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j] and Rule 10b-5 [17 CFR § 240.10b-5] thereunder, and Sections 206(1), 206(2), and 206(4) of the Advisers Act [15 U.S.C. §§ 80b-6(1), 80b-6(2), and 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

### III.

Issue an Order requiring defendants to disgorge the ill-gotten gains received as a result of the violations alleged in this Complaint, including prejudgment interest.

## IV.

With regard to the defendants' violative acts, practices and courses of business set forth herein, issue an Order imposing upon defendants appropriate civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

## V.

Retain jurisdiction of this action in accordance with the principals of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## VI.

Grant such other relief as this Court deems appropriate.

## JURY DEMAND

The Commission hereby requests a trial by jury.

>                    **UNITED STATES SECURITIES**
>                    **AND EXCHANGE COMMISSION**
>
>                    By: /s/ Jonathan S. Polish
>                    Jonathan S. Polish (ARDC No. 6237890)
>                    Jason A. Howard (ARDC No. 6283113)
>                    Attorneys for Plaintiff
>                    **U.S. SECURITIES AND**
>                      **EXCHANGE COMMISSION**
>                    175 West Jackson Blvd., Suite 900
>                    Chicago, IL 60604
>                    Telephone: (312) 353-7390

Dated: August 6, 2013